TODD R. HAAS (SBN 190868)
thaas@selmanbreitman.com
RYAN M. SELLERS (SBN 270374)
rsellers@selmanbreitman.com
SELMAN BREITMAN LLP
101 W. Broadway, Suite 1330
San Diego, CA 92101
Telephone: 619.564.3600
Facsimile: 619.564.363

Attorneys for Plaintiff
SENTRY INSURANCE A MUTUAL COMPANY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SENTRY INSURANCE A MUTUAL COMPANY, a Wisconsin corporation<br><br>Plaintiffs,<br><br>v.<br><br>PROVIDE COMMERCE, INC., a Delaware corporation; LIBERTY MEDIA CORPORATION, a Delaware corporation; and DOES 1-100<br><br>Defendants. | Case No. **'14CV2868 L    BLM**<br><br>**COMPLAINT** |

Plaintiff SENTRY INSURANCE A MUTUAL COMPANY ("SENTRY") alleges as follows:

## THE PARTIES

1. Plaintiff SENTRY is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Stevens Point, Wisconsin. SENTRY is an insurance company.

2. Defendant PROVIDE COMMERCE, INC. ("PROVIDE COMMERCE") is a Delaware corporation with its principal place of business in California.

1

COMPLAINT

3. Defendant LIBERTY MEDIA CORPORATION ("LIBERTY MEDIA") is a Delaware corporation with its principal place of business located in Colorado.

4. On information and belief, PROVIDE COMMERCE was a wholly owned subsidiary of LIBERTY MEDIA. LIBERTY MEDIA procured insurance policies on behalf of itself and its subsidiaries. LIBERTY MEDIA is named in this matter because of its interest in the general liability policies under which PROVIDE COMMERCE seeks coverage.

5. The true names and capacities, whether individual, corporate, associate or otherwise, of defendant Does 1 through 100, inclusive, are unknown to SENTRY, who therefore sues those counter-defendants by such fictitious names. SENTRY is informed and believes and thereon alleges that each fictitiously named defendant either has, or claims to have, an interest in SENTRY's insurance policies and/or had a duty to SENTRY to fully report regarding the insurance requested and the risks and claims associated with issuing insurance to LIBERTY MEDIA and/or PROVIDE COMMERCE as described in this Complaint, the exact nature of which is unknown to SENTRY. SENTRY is entitled to the relief requested herein against all of these fictitious counter-defendants. SENTRY therefore, sues these defendants by such fictitious names and will insert their true names and capacities when obtained, together with charging allegations if not already set forth herein.

6. SENTRY includes each of the defendants herein, in order to bind them to this court's determination of this Complaint, and these parties are necessary parties under Federal Rules of Civil Procedure, Rules 19 and 20.

## POLICIES OF INSURANCE

7. SENTRY provided commercial general liability coverage to named insured LIBERTY MEDIA under three (3) successive policies numbered 90-17682-03 ("the SENTRY POLICIES"). The first insurance policy provided coverage during the policy period 07/31/09 to 07/31/10. PROVIDE COMMERCE is a named

insured on this policy. The second insurance policy provided coverage during the policy period 07/31/10 to 07/31/11. PROVIDE COMMERCE is a named insured on this policy. The third insurance policy provided coverage during the policy period 07/31/11 to 07/31/12. PROVIDE COMMERCE is a named insured on this policy.

8. Several policy exclusions preclude and/or exclude coverage for the loss alleged in the UNDERLYING ACTION.

9. Pursuant to Exclusion 2(i) of the SENTRY POLICIES entitled "INFRINGEMENT OF COPYRIGHT, PATENT, TRADEMARK OR TRADE SECRET," SENTRY does not have a duty to defend or indemnify PROVIDE COMMERCE for "'[p]ersonal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights."

10. Pursuant to Exclusion 2(l) of the SENTRY POLICIES entitled "UNAUTHORIZED USE OF ANOTHER'S NAME OR PRODUCT," SENTRY does not have a duty to defend or indemnify PROVIDE COMMERCE for "'[p]ersonal and advertising injury' arising out of the unauthorized use of another's name or product in your e-mail address, domain name, or metatag, or any other similar tactics to mislead another's potential customers."

11. Pursuant to Exclusion 2(a) of the SENTRY POLICIES entitled "KNOWING VIOLATION OF THE RIGHTS OF ANOTHER," SENTRY does not have a duty to defend or indemnify PROVIDE COMMERCE for "'[p]ersonal and advertising injury' caused by or at the direction or with the consent or acquiescence, of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

12. Pursuant to Exclusion 2(b) of the SENTRY POLICIES entitled "MATERIAL PUBLISHED WITH KNOWLEDGE OF FALSITY," SENTRY does not have a duty to defend or indemnify PROVIDE COMMERCE for "'[p]ersonal and advertising injury' arising out of oral or written publication of material, if done

by or at the direction of the insured with knowledge of falsity."

13. Pursuant to Exclusion 2(c) of the SENTRY POLICIES entitled "MATERIAL PUBLISHED PRIOR TO POLICY PERIOD," SENTRY does not have a duty to defend or indemnify PROVIDE COMMERCE for "'[p]ersonal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

14. The SENTRY POLICIES contain a Distribution of Material in Violation of Statute exclusion endorsement which provides that SENTRY does not have a duty to defend or indemnify PROVIDE COMMERCE for "'[p]ersonal and advertising injury' arising out of directly or indirectly out of any action or inaction or omission that violates or is alleged to violate:

    a. The Telephone Consumer Protection Act (TCPA) including any amendment of or addition to such law;

    b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

    c. Any statute, ordinance, or regulation, other than the TCPA or CAN-SPAM Act of 2003 that prohibits or limits the sending, transmitting, communicating, or distribution of material or information."

## THE UNDERLYING ACTION

15. According to the First Amended Complaint ("FAC") filed by Edible Arrangements, LLC, et al. ("Edible Arrangements") in the lawsuit entitled *Edible Arrangements, LLC, et al. v. Provide Commerce, Inc.* ("the UNDERLYING ACTION"), Edible Arrangements is a leader in artfully designed and arranged fresh fruit products. (FAC, ¶8.) A true and correct copy of the FAC is attached hereto as Exhibit A.

16. According to the UNDERLYING ACTION, Edible Arrangements owns multiple U.S. registrations for Edible Arrangements and Edible Arrangements and Design, for use in connection with its sculpted fruit arrangements and other fruit

products, including multiple designs. (FAC, ¶9.)

17. According to the UNDERLYING ACTION, through over 1000 company-owned and franchise stores, Edible Arrangements offers arrangements of fresh fruit sculpted into the shapes of flowers arranged in containers that mimic floral bouquets as well as gourmet chocolate dipped fruit, fruit salads, and other fruit-based products, including beverages, hereinafter referred to as the "Edible Arrangement Goods". (FAC, ¶11.)

18. According to the UNDERLYING ACTION, Edible Arrangements promotes and sells its products via the internet at www.ediblearrangements.com. (FAC, ¶12.)

19. According to the UNDERLYING ACTION, the Edible Arrangements trademarks have become famous and signify the artful, high quality Edible Arrangements Goods. (FAC, ¶¶13-15.) The UNDERLYING ACTION further alleges that customers have come to associates goods sold under the Edible Arrangements trademarks with artful, fresh, high quality products, and these trademarks symbolize the goodwill and reputation of Edible Arrangements and are an intangible asset of substantial commercial value. (FAC, ¶16.)

20. According to the UNDERLYING ACTION, Provide Commerce is an online retailer that sells flowers, plants, and gift baskets under multiple brands, including ProFlowers, Shari's Berries, and Cherry Moon Farms wherein Provide Commerce sells fresh and chocolate-dipped fruit, the same type of goods covered by the Edible Arrangement trademarks and sold by Edible Arrangements. (FAC, ¶17.)

21. According to the UNDERLYING ACTION, Google Inc. ("Google") operates the world's largest internet search engine on www.google.com. (FAC, ¶18.) The UNDERLYING ACTION further alleges that after a consumer searches on Google, a results list based upon keywords links to websites, ordered in descending relevance to the keywords entered. (FAC, ¶18.)

22. According to the UNDERLYING ACTION, the Google results screen

also includes context-based advertising, triggered by the keywords entered. (FAC, ¶19.)

23. According to the UNDERLYING ACTION, through the Google Adwords program, a retailer selects keywords that it expects a consumer might enter in a search query when looking for the types of goods or services that the retailer offers, including either broad categories or exact words or phrases. (FAC, ¶19.) The UNDERLYING ACTION further alleges that, when the keywords are entered, the retailer's advertisement and a link to its website appears on the searcher's results page, and advertisers pay Google each time an internet user clicks on the link to the advertiser's website. (FAC, ¶19.)

24. According to the UNDERLYING ACTION, prior to Valentine's Day in February 2010, Provide Commerce selected "Edible Arrangements" and the confusingly similar "Edible Fruit Arrangements" as a keyword that would trigger advertisements of its ProFlowers, Shari's Berries, and Cherry Moon Farms brands, with the deliberate intention of directing consumers and business away from Edible Arrangements. (FAC, ¶20.) The UNDERLYING ACTION further alleges that, thereafter, Edible Arrangements confronted Provide Commerce and demanded that it cease and desist its infringement of Edible Arrangements' trademark rights. (FAC, ¶21.) The UNDERLYING ACTION further alleges that Provide Commerce denied committing trademark infringement, but following another confrontation by Edible Arrangements, Provide Commerce admitted using Edible Arrangements in its Google Ad content, claiming that it was "temporary" and due to an "inadvertent" search query setting. (FAC, ¶21.)

25. According to the UNDERLYING ACTION, Provide Commerce further advised that it had disabled the setting in its Google Adwords account, removing Edible Arrangements' protected trademarks from its ad content. (FAC, ¶22.) The UNDERLYING ACTION further alleges that Edible Arrangements was informed that Provide Commerce had in fact taken steps to remove the infringing content

from its ads and Edible Arrangements closed the matter. (FAC, ¶22.)

26. According to the UNDERLYING ACTION, in or about February 2014, Edible Arrangements learned that Provide Commerce had apparently again selected Edible Arrangements' trademark as a keyword and resumed its use of the confusingly similar mark "Edible Fruit Arrangements." (FAC, ¶23.) The UNDERLYING ACTION further alleges that Provide Commerce also uses "Edible Fruit Arrangements" in the content of ads displayed through the search engine located at Bing.com. (FAC, ¶23.) The UNDERLYING ACTION further alleges that, as an example, a Provide Commerce ad that populated on February 24, 2014 when "edible arrangements" was used as a search query at google.com stated "Ad related to "edible arrangements" – "Edible Fruit Arrangements – Delicious Fruit Gifts 20% Off" at www.proflowers.com/Fruit.Gifts  (FAC, ¶23.)

27. According to the UNDERLYING ACTION, during the same time period, Provide Commerce started using the domain names "www.ediblearragements.com" and "www.edibelarrangements.com" as deliberate misspellings of the Edible Arrangement trademarks so that when consumers who inadvertently enter these domain names into an internet browsers they are diverted to Provide Commerce's www.berries.com website. (FAC, ¶24.) The UNDERLYING ACTION further alleges that this was done with the clear intent of trading on the reputation and goodwill of the Edible Arrangements trademarks. (FAC, ¶24.)

28. According to the UNDERLYING ACTION, upon learning that Provide Commerce had resumed its infringing keyword and ad content activities, on February 6, 2014, Edible Arrangements sent Provide Commerce a demand that it immediately cease and desist in its unlawful conduct. (FAC, ¶26.) The UNDERLYING ACTION further alleges that Provide Commerce admitted to the deliberate use of the confusingly similar Edible Fruit Arrangements trademark in its advertising content, but refused to discontinue such use. (FAC, ¶26.)

COMPLAINT

29. According to the UNDERLYING ACTION, Provide Commerce's pattern of infringing conduct and repeated, blatant disregard for Edible Arrangements' trademark rights, establishes that Provide Commerce's use of the infringing trademarks is deliberate and willful for the purpose of misleading and confusing the public about its association with Edible Arrangements, and to trade on the goodwill, reputation and fame of Edible Arrangements and its brand. (FAC, ¶27.)

30. In the UNDERLYING ACTION, Edible Arrangements alleges causes of action described as Trademark Infringement (Count I), False Designation of Origin or Sponsorship and Unfair Competition (Count II), Trademark Dilution (Count III), Common Law Trademark Infringement (Count IV), Unfair Competition and Deceptive Trade Practices in Violation of the Connecticut Unfair Trade Practices Act (Count V), and Violation of the Anticybersquatting Consumer Protection Act (Count VI).

31. In the first cause of action for Trademark Infringement in the UNDERLYING ACTION, Edible Arrangements alleges that Provide Commerce has "used and continues to use in commerce the Edible Arrangements Marks, or counterfeits, copies, reproductions or colorable imitations thereof in connection with the sale, offering for sale, distribution, and advertising of [Provide Commerce]'s goods and services." (FAC, ¶ 31.) The UNDERLYING ACTION further alleges that Provide Commerce's actions "constitute willful infringement of EA's exclusive rights in the Edible Arrangement Marks in violation of 15 U.S.C. §1114" and "has been and continues to be done with the intent to cause confusion, mistake and to deceive consumers concerning the source and/or sponsorship of [Provide Commerce]'s goods and services." (FAC, ¶¶ 32-33.)

32. In the second cause of action for False Designation of Origin or Sponsorship and Unfair Competition in the UNDERLYING ACTION, Edible Arrangements alleges that Provide Commerce "has knowingly used and continues to

use the Edible Arrangements Marks in commerce, or counterfeits, reproductions, copies, or colorable imitations thereof, in connection with the goods and services that the Defendant advertises, promotes, and sells." (FAC, ¶ 37.)

33. In the third cause of action for Trademark Dilution in the UNDERLYING ACTION, Edible Arrangements alleges that Provide Commerce "has used and continues to use in commerce the Edible Arrangements Marks, or counterfeits, reproductions, copies, or colorable imitations thereof, in connection with the advertisement, promotion, and sale of [Provide Commerce]'s products" which is "likely to cause dilution by blurring, tarnishment, and whittling away the distinctiveness of the famous Edible Arrangement Marks." (FAC, ¶¶ 45-46.) The UNDERLYING ACTION further alleges that Provide Commerce has allegedly used the Edible Arrangement trademarks "willfully and with the intent to dilute the Edible Arrangement Marks, and with the intent to trade on the reputation and goodwill of EA." (FAC, ¶ 47.)

34. In the fourth cause of action for Common Law Trademark Infringement in the UNDERLYING ACTION, Edible Arrangements alleges that Provide Commerce, "with knowledge of and with intentional disregard of EA's rights, continue to advertise, promote, and sell goods and services using the Edible Arrangements Marks" which "cause and continue to cause confusion as to the source and/or sponsorship of [Defendant]'s products." (FAC, ¶ 53.)

35. In the fifth cause of action for Unfair Competition and Deceptive Trade Practices in Violation of the Connecticut Unfair Trade Practices Act in the UNDERLYING ACTION, Edible Arrangements alleges that Provide Commerce's "has engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduce of trade and commerce" which constitutes "unfair competition and unfair or deceptive business practices in violation of Conn. Gen. Stat. § 41-110b(a), et seq." (FAC, ¶¶58-59.)

36. In the sixth cause of action for Violation of the Anticybersquatting

Consumer Protection Act in the UNDERLYING ACTION, Edible Arrangements alleges that Provide Commerce has "misappropriated" or "registered, trafficked in and used the Infringing Domain Names" which are "confusingly similar to and dilutive of the Edible Arrangement Marks." (FAC, ¶¶64-65.) The UNDERLYING ACTION further alleges that Provide Commerce has "registered, trafficked in and used the Infringing Domain Names with the intent and purpose of diverting consumers and business away from EA." (FAC, ¶66.)

## SENTRY'S AGREEMENT TO DEFEND

37.     SENTRY agreed to provide a full and complete defense to PROVIDE COMMERCE relating to the UNDERLYING ACTION, subject to the provisions of California Civil Code section 2860 and/or Connecticut law. Sentry reserved all of its rights, contractual and otherwise.

38.     SENTRY's reservation of rights includes a reservation of rights: (1) to recover from any insured(s), from any other insurer(s) or from any other parties, any payments made by SENTRY, including payments for indemnity, defense costs and expenses, attorneys' fees and costs of suit; (2) to seek reimbursement from any insured, or from any party being afforded representation, of any amounts paid for legal services or any other fees or expenses in connection with allegations, claims and/or causes of action which are not covered under the insurance afforded by SENTRY; and (3) to seek reimbursement from any insured, or from any party on whose behalf settlement or indemnity payments may be made, of any amounts paid for indemnity in connection with allegations, claims and/or causes of action which are not covered under the insurance afforded by SENTRY. This includes, but is not limited to, all rights to reimbursement as addressed in *Buss v. Superior Court (Transamerica Ins. Co.)* (1997) 16 Cal.4th 35, and *Scottsdale Insurance Company v. MV Transportation* (2005) 36 Cal.4th 643.

39.     SENTRY's reservation of rights applies to PROVIDE COMMERCE, to any insured, to any person or organization who claims coverage (including defense

or indemnity) from SENTRY, and to any person or organization who is afforded a defense or legal representation or with respect to whom any amounts are paid by or on behalf of SENTRY.

40. SENTRY agreed to provide independent counsel under California Civil Code section 2860 ("Section 2860") and/or Connecticut law, subject to a full and complete reservation of rights.

## FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF CONCERNING RIGHTS AND OBLIGATIONS UNDER SENTRY POLICIES

(Against PROVIDE COMMERCE, LIBERTY MEDIA and Does 1 to 100)

41. Plaintiff, SENTRY, refers to paragraphs 1 through 40 above, and incorporates those paragraphs as though fully set forth in this cause of action.

42. SENTRY seeks a declaration that SENTRY is not obligated to pay for the defense and indemnity of PROVIDE COMMERCE arising out of the UNDERLYING ACTION due to the policy provisions, conditions and/or exclusions in the SENTRY POLICIES.

43. Accordingly, an actual controversy has arisen and now exists between PROVIDE COMMERCE and SENTRY concerning their respective rights and obligations of the parties in connection with the defense and indemnity of PROVIDE COMMERCE arising out of the UNDERLYING ACTION, as alleged in the UNDERLYING ACTION in that PROVIDE COMMERCE contends the policy is in effect and covers the claim and SENTRY contends that the policy does not cover the claim.

44. SENTRY requests that this court adjudge, declare and decree that SENTRY does not have a duty to defend and/or indemnify PROVIDE COMMERCE arising out of the UNDERLYING ACTION, as alleged in the UNDERLYING ACTION due to the policy provisions, conditions and/or exclusions in the SENTRY POLICIES.

COMPLAINT

## SECOND CAUSE OF ACTION FOR REIMBURSEMENT

(Against PROVIDE COMMERCE, LIBERTY MEDIA and Does 1 to 100)

45. Plaintiff, SENTRY, refers to paragraphs 1 through 44 above, and incorporates those paragraphs as though fully set forth in this cause of action.

46. SENTRY agreed to pay reasonable and necessary fees and expenses incurred for the defense and legal representation of PROVIDE COMMERCE relating to the UNDERLYING ACTION, including the defense of claims that were not potentially covered by the SENTRY POLICIES, subject to a full and complete reservation of rights.

47. SENTRY continues to pay certain purported defense fees and costs incurred by PROVIDE COMMERCE in defense of the UNDERLYING ACTION.

48. SENTRY did not pay and is not paying these sums as a volunteer, as SENTRY has specifically made payment pursuant to a full and complete reservation of rights.

49. When SENTRY accepted the defense of PROVIDE COMMERCE, it did so pursuant to a full and complete reservation of rights, and SENTRY specifically reserved its right to seek reimbursement from PROVIDE COMMERCE of any defense related payments that SENTRY may make that are not covered under the SENTRY POLICIES.

50. In accordance with the SENTRY POLICIES, SENTRY is only obligated to defend against claims and allegations covered by the SENTRY POLICIES and is only obligated to pay reasonable and necessary defense fees and costs. SENTRY alleges that it has paid and continues to pay defense fees and costs incurred by or on behalf of PROVIDE COMMERCE which are not covered, or potentially covered, under the SENTRY POLICIES. As such, SENTRY alleges that PROVIDE COMMERCE has been unjustly enriched by these payments in an amount according to proof.

51. SENTRY is informed and believes and thereon alleges that it is entitled

COMPLAINT

to contribution and/or reimbursement from PROVIDE COMERCE in an amount according to proof at trial, for fees and/or other expenses incurred and/or paid by or on behalf of SENTRY for PROVIDE COMMERCE.

**WHEREFORE**, SENTRY requests relief as follows:

1. For a declaration that the SENTRY POLICIES provide no coverage for the losses at issue arising out of the UNDERLYING ACTION based on the terms and conditions in the SENTRY POLICIES and therefore SENTRY has no obligation to defend or indemnify PROVIDE COMMERCE for any settlement or judgment that may be obtained in the UNDERLYING ACTION, also entitling SENTRY to reimbursement for any sums paid in the defense, indemnity and/or settlement of any claim related to the UNDERLYING ACTION.

2. For reimbursement of any and all sums paid by SENTRY for the defense and/or indemnity of claims arising out of, and/or relating to, the UNDERLYING ACTION.

3. For costs of suit herein incurred;

4. For reasonable attorney's fees incurred;

5. For interest, at the maximum legal rate, on the total damages to be determined at trial.

6. For such other relief as the court may deem proper.

DATED: December 4, 2014        SELMAN BREITMAN LLP

By: _____
TODD R. HAAS
RYAN M. SELLERS
Attorneys for Plaintiff
SENTRY INSURANCE A MUTUAL COMPANY

COMPLAINT